· WILLIAM H. DIXON

*v.*

JOSEPHINE DIXON.

[Decided December 11th, 1909.]

1. Where a mother, after securing a judgment in a New Jersey court awarding her the custody of her children, left the state. and the father, on application to the court, obtained a modification of the judgment permitting the children to visit him in the State of New York, where he resided, the order of modification was within the protection of the clause of the federal constitution declaring that full faith and credit shall be given in each state to judicial proceedings of every other state.

2. Where the mother, in such case, commenced an action for divorce in the state to which she removed, the court, in such action, might determine the right to custody of the children on conditions arising since the order of the New Jersey court, but could not base its adjudication on evidence of facts occurring before that order.

3. Where the mother, on application in the divorce suit for an order for the sole custody of the children pending suit, offered no evidence of facts occurring since the modified order of the New Jersey court, except that on the return of the children to the mother from a visit to the father, under order of the court, they were in poor health, such poor health not being ascribed to the treatment of the father, an order in such divorce suit. granting the prayer for such custody, being based on the facts occurring before the order of the New Jersey court, was of no effect, since it failed to give full faith and credit to the New Jersey judgment.

4. Where, on presentation of a petition by a husband for commitment of the wife for violating an order as to the custody of the children, she had not yet disobeyed it, but her counsel had given notice that she would not obey it in view of an order of a court of another state, and her counsel disavow any intentional disrespect to the court making the former order, she will not be adjudged in contempt, though the order of the foreign court is not valid.

5. Where, after an order granting to a wife the custody of the children with a provision that they be sent to visit at the husband's home two · months of each year, she commenced suit in another state for divorce, and procured an order for sole custody of the children pending suit. but the situation was otherwise unchanged, the former order would not be modified to give the husband custody of the children.

6. In a proceeding for contempt for violating an order as to the custody of the children of divorced parents, where the right to the custody was determined according to the claims of the petitioner, but there had not been an actual violation of the order, and only notice of an intended violation, neither party would be charged with costs.

On petition.

*Mr. Richard V. Lindabury* and *Mr. J. Holmes* (of New York), for the petitioner.

*Mr. Gilbert Collins,* for the defendant.

STEVENS, V. C.

This case comes up on petition. The petitioner asks the court to punish the defendant, Mrs. Dixon, for her contempt in disobeying an order, made July 24th, 1907, which directed that the two children of petitioner and defendant, whose custody was continued in defendant, should be sent with their nurse to visit their father two months in each year—one month during the summer or early autumn at his country home in Pittsfield, Massachusetts, and one month during the winter at his home in New York City. The petitioner also asks that the general custody of the children be transferred to him.

At the time of the institution of this proceeding by the father, in June, 1905, he was living in New York, and his wife, the defendant, was living separate from him, in New Jersey. The children were then two and three years old. Their custody was awarded to the mother but the father was given the right to visit them.

After that the mother went to Maine and on the father's application the original order was modified by that of July 24th, 1907. Mrs. Dixon's answer to the present application is that the order last mentioned has been superseded by an order in a divorce suit instituted by her in Maine, made on August 30th, 1909, awarding the sole custody of the children, *pendente lite,* to her.

The original order of this court was appealed from and affirmed. *Dixon* v. *Dixon, 71 N. J. Eq. (1 Buch.) 281.* The second order, made after careful consideration of the question then raised, was acquiesced in and obeyed until the Maine divorce proceeding was instituted. That question was whether this court continued to have jurisdiction over the children after they

had been taken by their mother to Maine. The decision was in favor of the jurisdiction. 72 *N. J. Eq. (2 Buch.)* 588.

The question now to be considered is twofold—*first,* is the order of July 24th, 1907, entitled to full faith and credit under the federal constitution? *second,* if it is, does the subsequent order of the justice of the supreme court of Maine supersede it?

There can be no doubt that the order of July 24th, 1907, is within the protection of that clause of the federal constitution which declares that "full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state." Discussion is unnecessary, for the decisions are all one way. The rule is that in any controversy between the parents relating to the custody of their children the award made by a competent tribunal is *res adjudicata,* and cannot thereafter be questioned on the same state of facts. *Mercein* v. *People, ex rel. Barry, 25 Wend. 64; Matter of Lederer, 38 Misc. 668; Bleakley* v. *Barclay, 75 Kan. 462; Brooke* v. *Logan, 112 Ind. 183; Slack* v. *Perrine, 9 App. Cas. Dist. Col. 128; Slate* v. *Baird, 19 N. J. Eq. (4 C. E. Gr.) 481-486; Stelson* v. *Stetson, 80 Me. 483.* Speaking of a child whom it was awarding to the custody of a mother living in Massachusetts, Justice Danforth, in the Maine case last cited, said: "Though she (the mother) may not personally be within the jurisdiction of the court, the subject-matter is, so that the judgment of the court will be valid and binding upon her, and. by the provisions of the constitution of the United States, may be enforced against her, though in another state."

But the adjudication is an adjudication upon the issue presented and upon that only. So far as children are concerned, the situation is, or may be, constantly varying. The parent fit to have the custody of his children to-day may, by reason of changed circumstances, become unfit to-morrow. The above rule does not prevent the courts of the state, within whose limits the children may be, from considering whether a change in the situation may not call for a new disposition. But the changing circumstances must be, obviously, those that affect the children, not those that concern the parents. To illustrate by the case in hand: In her petition, presented to the Maine tribunal, Mrs.

Dixon says that she lived with her husband until May, 1904, and that, while so living, he treated her with extreme cruelty, whereby her health and life became endangered. It is manifest that evidence bearing upon his disposition and upon his conduct towards his wife might have an important bearing upon his fitness to have the custody of his children, either for two months in the year or for any lesser period, and that it must or should have been considered by this court when the order of July 24th, 1907, was made. By reason of the effect of the doctrine of *res adjudicata* this evidence could not be made the basis of an independent adjudication by another court. If this were not so, the rule established by the decisions to which I have referred would be nullified.

But, on the other hand, it is equally manifest that it might be shown that, since the date of the prior adjudication, the father had so conducted himself as to have become unfit to associate with his children; that any association with them would be injurious to their morals or welfare.

While this court, therefore, as has been decided, may still have jurisdiction, if it sees fit to exercise it, it does not follow that the courts of Maine may not also have jurisdiction as long as the children are actually present in that state, and it must be conceded that the Maine tribunals are, for the time being, in a position to exercise it more beneficially and effectually than this court can.

But, when the mother refuses to allow her children to visit their father, the question for the courts of both jurisdictions is not, whether, in view of all that has occurred at any time in the past, the father is to be denied his parental right, but whether such a change has taken place in his character and circumstances since the date of the order of July 24th, 1907, as to require such denial. The evidence taken before me on this hearing, a hearing in which both parties participated, shows that such a change has not, in fact, occurred. If the same evidence, on the same issue, had been taken by the Maine tribunal, I have no doubt it would have reached the same conclusion.

One naturally asks why the husband, having been notified of the application, did not appear, at least by counsel. The case

presents a somewhat singular situation. Mr. Dixon is domiciled in New York. By the law of that state he may, in so far as the proceeding is a divorce proceeding, disregard notice served upon him in New York. The Maine decree will not, in New York, be treated as severing the marriage bond.

The application for the custody of the children was made, not as an independent proceeding, but in the course of the proceeding for divorce.

Should he have appeared to contest it, would or would not such appearance be treated as an appearance in the cause and would it give validity in New York to an adjudication which would otherwise be disregarded by the courts of that state?. No doubt, under advice of counsel, he was unwilling to do that which would raise such a question.

This brings me to the real question in the case, and, as I conceive, the only debatable one. "Ought this court to presume that the order of Mr. Justice Spear was based upon evidence showing a change of circumstances?" Whether I look at the Maine record or at the evidence presented to him on the part of the wife, I am unable to find any indication that her counsel presented to Judge Spear the only question which it was competent for them to present.

First, as to the issue made in the record: In her libel for divorce Mrs. Dixon asks simply for the custody of her children. She does not state any facts pertinent to this part of her prayer. The facts that she states relate only to her prayer for divorce and to a time anterior to July, 1907.

Her subsequent petition praying for the custody of her children reads as follows:

"To the Honorable Justices of the Supreme Judicial Court:

"Respectfully represents Josephine W. Dixon, of Portland, in said county of Cumberland, that she has heretofore filed a libel in said court against William H. Dixon, praying for a divorce and asking for the custody of her minor children, William P. Dixon, Jr., and Barbara W. Dixon, named in said libel; that said libel has been duly served upon the said William H. Dixon and that it is now pending in said court; that said children are now under her care and are residing with her in the State of Maine, but that the said William H. Dixon has made demand upon her to deliver said children to him in the State of Massachusetts.

"Wherefore she prays this honorable court to give her the custody of said children during the pendency of said libel.

"Dated this 16th day of August, A. D. 1909.

"JOSEPHINE W. DIXON."

Mr. Dixon failing to appear, an *ex parte* hearing was had, and on August 30th Mr. Justice Spear made the following order:

"It appearing that said libel for divorce is pending in said court; that said petition has been duly served upon the said William H. Dixon; that said Josephine W. Dixon resides in said State of Maine, and that she is a suitable person to have the care and custody of said William P. Dixon, Jr., and the said Barbara Dixon, minor children named in said libel, and who reside with the said Josephine W. Dixon in said State of Maine, it is

"Ordered, adjudged and decreed that, pending said libel for divorce, the said Josephine W. Dixon shall retain and have the sole care and custody of said minor children.

"A. M. SPEAR,

"August 30th, 1909.                *Justice Supreme Judicial Court.*"

As this order adjudges that Mrs. Dixon is to have the *sole* care and custody of her children, it cannot be doubted but that it conflicts with the prior order of this court.

It was held in *Reynolds* v. *Stockton, 140 U. S. 254,* that a judgment not responsive to the pleadings is a nullity in so far as it is not responsive, and in *Munday* v. *Vail, 34 N. J. Law (5 Vr.) 418,* that a decree entirely aside from the issue raised in the record is invalid and to be treated as void, even in a collateral proceeding.

Under the issue raised by Mrs. Dixon's petition, a decree that Mr. Dixon had, since July 24th, 1909, become an unfit person to have that limited enjoyment of his children's society which the order of this court had given him, would not have been responsive to the allegations of a pleading, which averred merely that the children were then under her care and that William H. Dixon had made demand upon her to deliver said children to him. Her allegation that she had filed a libel, while it showed a change in her relations with her husband, did not show a change in the relations of that husband to his children.

But not only was no proper issue made by her pleading; she did not produce any evidence of unfitness at the *ex parte* hearing. It is true that according to the evidence of Mr. Hutchin-

son she stated to Mr. Justice Spear that after their last visit to their father (which occurred in the winter of 1909) the children had returned (to Maine) in poor health, but no attempt was made to show that their condition was attributable to neglect or misconduct on his part. They might have contracted colds on the journey back to Maine, after they had left their father's house, and such was the evidence given on the hearing before me. No other evidence of unfitness was even suggested. The order made on the issue as she made it did not, therefore, give full faith and credit to the decree of July, 1907, and, according to the above-cited cases of *Stockton* v. *Reynolds* and *Munday* v. *Vail,* may be disregarded even in a collateral proceeding.

I am of opinion, therefore, that that decree is still in force. It provides that the children shall be sent, with their nurse, to visit their father for a month in the winter and for a month during the summer or early autumn. When Mr. Dixon's petition was presented Mrs. Dixon had not as yet disobeyed it. Her solicitor had merely given notice that she would not send the children in view of what she regarded as a change in the situation. Her counsel disavow any intentional disrespect. They appear to have thought that the Maine order, which they were endeavoring to obtain, would supersede the New Jersey order. In view of these circumstances, it would not be proper at this time to adjudge Mrs. Dixon in contempt.

The petitioner asks that the custody of the children may be awarded to him. The situation as it existed in July, 1907, so far as the children are concerned, remains unchanged. I see no reason why the order should be modified.

In view of the circumstances, I think neither party should pay costs to the other.