**DEMING et al., Civil Service Com'rs v. UNITED STATES ex rel. WARD.**

Court of Appeals of District of Columbia. Argued November 6, 1929. Decided January 6, 1930.

No. 4962.

Leo A. Rover, of Washington, D. C., for appellants.

Marcus Borchardt and Wm. S. Ward, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. An appeal from a judgment of mandamus entered by the lower court upon the pleadings.

It appears that appellants, acting as the United States Civil Service Commission, formally announced that on February 26, 1929, an official examination would be held by them at Washington, D. C., to fill permanent vacancies in the apportioned service in Washington, otherwise known as the government "departmental service," and that the appellee, Charles Nathaniel Ward, a minor, applied in due time and form to be examined for the position of senior stenographer and senior typist, the applicant claiming to be a resident of the state of Ohio temporarily absent therefrom. The Commission refused the application upon the ground, as alleged, that the applicant, whether or not a legal resident of the state of Ohio, had not been "actually domiciled" in that state for at least one year previous to the examination, within the sense of the governing statute. The applicant thereupon brought his present action in mandamus to compel the respondents to admit him to the examination, and the lower court entered judgment in his favor. This appeal followed.

The statutory provisions in question appear in a proviso of section 7 of the Census Act, approved March 3, 1919, c. 97, 40 Stat. 1293 (5 USCA § 644), and read in part as follows:

" * * * Provided further, That hereafter all examinations of applicants for positions in the Government service, from any State or Territory, shall be had in the State or Territory in which such applicant resides, and no person ,shall be eligible for such examination * * * unless he or she shall have been actually domiciled in such State or Territory for at least one year previous to such examination: Provided further, That the Civil Service Commission shall hold examinations of applicants temporarily absent from the places of their legal residence or domicile in the District of Columbia and else-

where in the United States where examinations are usually held, upon proof satisfactory to the commission that such applicants are bona fide residents of the States or Territories in which such applicants claim to have legal residence or domicile. * * * "

The question therefore arises whether the applicant at the date of the examination was a bona fide resident of the state of Ohio, and had been "actually domiciled" in that state for at least one year previous to that date.

It appears that the petitioner was born in Canada on December 27, 1908, of American parents temporarily residing abroad, his father being a citizen of the United States and of the state of Ohio; that his father was born in the state of Ohio, and continuously lived there (except for temporary absences) until in 1911, when he was appointed to a position in the government service in Washington, D. C., following an examination in which he was credited at the time by the Civil Service Commission as being then a legal resident and actual domiciliary of the state of Ohio; that, as a result of such appointment, the petitioner's father moved to Washington, D. C., where he has since lived with his family, and continued to be employed in the government service; that he at all times claimed the state of Ohio as his actual domicile, and was and is a voter in that state; and that he considered his residence in Washington to be temporary only; that the petitioner came to Washington with his father in 1912, and has since resided here as a member of his family; and that prior to his coming here he lived for a period of about two years in Ohio. It appears, moreover, that the statutes of the state of Ohio contain the following provision:

"If a person remove to the District of Columbia or other federal territory to engage in the government service, he shall not be considered to have lost his residence in any county during the period of such service, and the place where such person resided at the time of his removal shall be considered and held to be his place of residence." Section 4866, par. 7, Gen. Code of Ohio.

It is admitted by respondents "that the said William S. Ward and consequently that his son, the petitioner, may be a 'legal resident' of the State of Ohio," but respondents aver "that such status does not constitute him or his son an 'actual domiciliary' of such state within the meaning of the Act of March 3, 1919 (40 Stat. 1293 [5 USCA § 644]), hereinbefore quoted." Respondents also aver that the petitioner's actual domicile for one year previous to

February 26, 1929, the date of the examination, was not in the state of Ohio, but in the District of Columbia. Respondents contend that the statutory provision requiring that the petitioner shall have been "actually domiciled" in the state of Ohio, as a condition precedent to a right to enter into the examination as a resident of that state, requires a real actual home, existing in fact in such state, with rooftree and fireside, which is the recognized locality of the person's domestic activities, physical absences from which are always for no more than temporary periods for temporary purposes, and that the statute is not satisfied by a mere voting residence existing only in contemplation of law.

We think it unnecessary for us to enter into a discussion of the different definitions which have been assigned by the authorities to the terms "residence" and "domicile" when used in the statutes, for in our opinion the subject is foreclosed in the present instance by former official interpretations of the present statutory provisions.

In the Census Act approved July 2, 1909, c. 2, 36 Stat. 3, a provision was enacted in which the term "actually domiciled" was used in pari materia with the subject now in question. Section 7 of that act reads in part as follows:

"Provided, That hereafter all examinations of applicants for positions in the government service, from any State or Territory, shall be had in the State or Territory in which such applicant resides, and no person shall be eligible for such examination or appointment unless he or she shall have been actually domiciled in such State or Territory for at least one year previous to such examination."

In 27 Op. Attys. Gen. 546, Attorney General Wickersham was called upon to answer the following questions of the Civil Service Commission relating to this enactment: "(4) Does the language 'actually domiciled' as used in the first proviso of section 7 above quoted imply and require actual abode and bodily presence?" and "(6) For the guidance of the Commission what, as nearly as may be defined, does the language 'actually domiciled' require, as used in this statute?"

In answer, the Attorney General wrote in part as follows:

" * * * I think it may be with propriety laid down that no respectable authority can be found for the proposition that under a statute requiring one to have

been 'actually domiciled' in a State or Territory for a given period he must have been continuously and bodily present within such State or Territory during the whole of that period in order to comply with such requirement of actual domicile. . * * *

"It cannot be said as a matter of law that actual physical presence at any time within the year preceding the date of the application for examination, is required to demonstrate actual domicile. There must, of course, have been actual physical presence at some time within the State in order to establish a residence, and that presence for such purpose must have been accompanied by an intention to continue indefinitely to reside and have one's home at that place. As was said by Attorney-General Miller, 'A general rule, applicable to all cases, cannot be formulated.' It is believed that the principles above cited will be sufficient to guide the Commission in its application of the law to the particular facts of any given case. Many States provide, either in their laws or constitutions, that absence in the public service or for purposes of attending an institution of learning, shall not affect the continued residence within the State. If a domicile be once established, it is presumed to continue until there has been a change of residence with the intention of establishing a new domicile.

■ With this official interpretation of the words "actually domiciled" in view, Congress employed the same language in relation to the same subject-matter in the legislation involved herein. Under such circumstances we are justified in assuming that it was the legislative intent that the words as thus employed should be given the interpretation set out by the Attorney General.

■ The conceded facts in this case disclose that, at a time more than two years prior to the date of the examination in question, the petitioner while a minor resided for several years continuously with his father in the state of Ohio, both of them being then actually domiciled in that state, and that neither of them, so far as appears, ever formed an intention of abandoning such domicile. When a domicile is once established, it is presumed to continue until there has been a change of residence with the intention of establishing a new domicile. But, when petitioner's father later moved to Washington to enter the government service, he expressly negatived both by word and conduct any inference that he was intending to change his domicile by reason of the removal. The petitioner, being a minor during the entire period, shared in the domicile of his father. Lamar v. Micou, 112 U. S. 452, 5 S. Ct. 221, 28 L. Ed. 751. Under these circumstances the physical absence of the petitioner from Ohio during the year preceding the examination is not material, and did not defeat his right to enter the examination as a bona fide resident of Ohio, who had been actually domiciled in the state for the prescribed period.

We conclude accordingly that the petitioner was entitled to a writ of mandamus to enforce this right, and that the judgment of the lower court to that effect should be, and it is, affirmed.